Case 4:20-cv-01474 Document 69 Filed on 03/15/22 in TXSD Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 15, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KYLE W REUTER, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-cv-01474 |
| XTO ENERGY, INC. ET AL., | § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants XTO Energy Inc. and Exxon Mobil Corporation's Motion for Summary Judgment. *See* Dkt. 41. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**, and this case be dismissed.

## BACKGROUND

XTO Energy Inc. ("XTO") is an energy company that specializes in oil and gas production throughout the United States. In 2010, ExxonMobil Corporation ("ExxonMobil") acquired XTO, making XTO a wholly-owned subsidiary of ExxonMobil.

In 2012, XTO hired Plaintiff Kyle Reuter ("Reuter") as an Associate Landman. As an Associate Landman, Reuter helped secure the rights to drill or operate on land owned by individuals, business entities, and the government. Reuter worked out of XTO's Fort Worth, Texas office.

On March 22, 2019, Reuter had a confrontation with his supervisor. A Human Resources inquiry determined that Reuter—who allegedly had a history of poor performance—had hurled profanities at his supervisor in a raised voice. As a result of this incident, XTO terminated Reuter on March 27, 2019.

Approximately nine months after his termination, Reuter filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against ExxonMobil, alleging disability discrimination. Importantly, Reuter did not

file a Charge of Discrimination against XTO. Reuter also did not provide XTO with notice of the Charge of Discrimination leveled against ExxonMobil or allow XTO to participate in the EEOC conciliation process.

After receiving a Right to Sue Notice from the EEOC, Reuter brought the instant lawsuit against ExxonMobil and XTO. Reuter alleges two causes of action: (1) disability discrimination under the Americans with Disabilities Act ("ADA"); and (2) retaliation under the ADA.

ExxonMobil and XTO have moved for summary judgment, raising a cacophony of reasons why this case should be dismissed as a matter of law. I only need to address two arguments: (1) ExxonMobil's claim that it is an improper defendant; and (2) XTO's contention that Reuter failed to exhaust his administrative remedies with XTO.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Miranda v. Navistar, Inc.*, 23 F.4th 500, 503 (5th Cir. 2022). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). At the summary judgment stage, a district court must resolve all factual controversies in favor of the non-moving party. *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 230 (5th Cir. 2015).

---

[1] Defendants have also filed a Motion to Strike Portions of Plaintiff's Summary Judgment Evidence. *See* Dkt. 52. Because the evidence at issue does not affect the disposition of the summary judgment motion, I deny the motion to strike as moot.

## ANALYSIS

A.   **EXXONMOBIL IS NOT A PROPER DEFENDANT**

It is well-settled that a defendant cannot be held liable for discrimination or retaliation under the ADA unless it qualifies as an "employer" under the statute. *See Bloom v. Bexar Cnty., Tex.*, 130 F.3d 722, 724 (5th Cir. 1997); *Jurek v. Williams WPC-I, Inc.*, No. CIV.A. H-08-01451, 2009 WL 1748732, at *5 (S.D. Tex. June 17, 2009). The ADA defines an employer as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111(5)(A). This statutory definition provides little, if any, assistance in resolving the issue of whether a parent corporation is a de facto employer. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). In an effort to provide some clarity to the situation, the Fifth Circuit has "construed the term 'employer' broadly to include superficially distinct entities that are sufficiently interrelated to constitute a single, integrated enterprise." *Id. See also Tipton v. Northrup Grumman Corp.*, 242 F. App'x. 187, 190 (5th Cir. 2007) ("[S]uperficially distinct enterprises may be exposed to liability [in employment-discrimination matters] upon a finding that they represent a single, integrated enterprise: a single employer." (quotation omitted)). Nonetheless, "[t]he doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Lusk*, 129 F.3d at 778.

To determine whether a parent corporation and its subsidiary are a "single employer," the Fifth Circuit looks at four factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *See id.* at 777. "This analysis ultimately focuses on . . . whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation." *Id.* I will briefly discuss each factor.

   1.   *Interrelation of Operations*

"The interrelation of operations element of the single employer test ultimately focuses on whether the parent corporation excessively influenced or interfered with the business operations of its subsidiary." *Id.* at 778. Put another way, the issue is

3

"whether the parent actually exercised a degree of control beyond that found in the typical parent-subsidiary relationship." *Id.*

Relevant factors indicating the existence of interrelated operations include evidence that the parent:

> (1) was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with the subsidiary; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained the subsidiary's books; (5) issued the subsidiary's paychecks; or (6) prepared and filed the subsidiary's tax returns.

*Id.*

In this case, Reuter has failed to show that the relationship between XTO and ExxonMobil was anything more than a normal parent-subsidiary relationship. The summary judgment evidence is clear and unequivocal. XTO and ExxonMobil do not have common officers or directors. XTO and ExxonMobil have separate payrolls, financial books, and tax employer identification numbers. XTO and ExxonMobil do not have commingled bank accounts or account receivables. There is simply no evidence that ExxonMobil was directly involved in XTO's daily decision-making process.

Reuter argues that operations between XTO and ExxonMobil are interrelated because ExxonMobil "conducted payroll and issued paychecks to" Reuter. Dkt. 49 at 19. But there is not a shred of evidentiary support for these naked assertions. To the contrary, the summary judgment record establishes, beyond a shadow of a doubt, that: (1) XTO and ExxonMobil had separate payrolls; and (2) XTO, not ExxonMobil, issued Reuter his paychecks. The actual paychecks are attached as exhibits to the Motion for Summary Judgment and clearly list XTO, not ExxonMobil, as the issuing party.

Reuter also asserts that an ExxonMobil employee named Sabrina Powell ("Powell") was involved in Reuter's termination, thus trying to create a factual dispute as to whether XTO and ExxonMobil had interrelated operations. However, Reuter conveniently fails "to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his . . . claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Needless to say, unsubstantiated

4

assertions are not competent summary judgment evidence." *Id.* Tellingly, the only summary judgment evidence discussing Powell indicates that she was an XTO employee, not an ExxonMobil employee. To top it off, the undisputed evidence presented by ExxonMobil establishes that "ExxonMobil did not recommend or make the decision to discharge Reuter." Dkt. 41-23 at 2.

Overall, Reuter has failed to provide any evidence demonstrating that ExxonMobil influenced, controlled, or interfered with the business operations of XTO. The first factor strongly weighs against Reuter and suggests that liability should not be imputed to ExxonMobil simply because it is XTO's parent corporation.

### 2. *Centralized Control of Labor Relations*

The second factor—centralized control of labor relations—"has been refined into an inquiry about what entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 343 (5th Cir. 2005) (quotation omitted). The Fifth Circuit has referred to the second factor as the "most important" one. *Tipton*, 242 F. App'x at 190.

Here, Reuter presents no facts that remotely suggest that ExxonMobil held centralized control over XTO's labor relations. It is Reuter's burden to offer evidence creating a genuine issue of material fact on the centralized control of labor relations factor. The mere fact that ExxonMobil was XTO's parent corporation is insufficient. Even though I am required to examine the record in the light most favorable to Reuter, the uncontroverted summary judgment evidence establishes that "XTO and ExxonMobil had separate Human Resources departments. During the relevant time period, the decisions regarding hiring, firing, promotion, and discipline for XTO employees were handled by the employee's supervisor at XTO in connection with XTO Human Resources for that employee's business unit." Dkt. 41-1 at 2. With no evidence that ExxonMobil made the final employment decisions for XTO, the second factor weighs heavily against application of the single employer theory of liability.

### 3. *Common Management*

The third factor asks whether the two business entities have common management. Reuter has provided no evidence of common management.

Accordingly, this factor also militates in favor of not holding ExxonMobil responsible for the actions of XTO.

### 4. *Common Ownership or Financial Control*

The fourth and final factor requires me to determine whether there is common ownership or financial control. Common ownership is an "ordinary aspect[] of a parent-subsidiary relationship." *Lusk*, 129 F.3d at 778. The mere existence of common ownership, however, is "not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id*. "A parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability." *Id*. "Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary . . . is sufficient to . . . permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions." *Id*.

\*\*\*

Based on the record before me, there is nothing outside the ordinary aspects of the parent-subsidiary relationship that warrants finding ExxonMobil as a proper defendant in this case. *See Reilly v. TXU Corp.*, No. 3:05-CV-0081-M, 2009 WL 857598, at \*2 (N.D. Tex. Mar. 31, 2009) ("In the Fifth Circuit, there is a strong presumption that a parent corporation is not the legal employer of its subsidiary's employees and thus, a parent company is ordinarily not liable for the discriminatory acts of its subsidiary."). Stated simply, there is no genuine issue of material fact. ExxonMobil did not serve as a final decision-maker in connection with Reuter's termination. Thus, ExxonMobil and XTO should not be considered a single employer. Settled law requires that ExxonMobil be dismissed from this case.

**B.     REUTER FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AS TO XTO**

In employment discrimination and retaliation cases brought under federal employment statutes, a plaintiff must exhaust all administrative remedies in front of the EEOC before pursuing his claims in federal court. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) ("[A]n employee must comply with the

ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA."). It follows, as a general rule, that "a party not named in an EEOC charge may not be sued under [the ADA]." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) (quotation omitted).

The purpose of requiring a plaintiff to identify each party who allegedly engaged in discrimination or retaliation in a charge before the EEOC is two-fold. First, it serves to notify the charged party of the alleged violation. Second, it gives the EEOC an opportunity for conciliation, which effectuates the ADA's primary goal of securing voluntary compliance with its mandates. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44 (1974).

In this case, it is undisputed that XTO is not named as a respondent in the EEOC charge. In fact, XTO's name is not mentioned anywhere in the two-page charge. The EEOC charge identifies ExxonMobil, and no other entity, as the employer that allegedly discriminated against Reuter.

The Fifth Circuit has recognized two limited exceptions to the naming requirement. First, a failure to name a party in an EEOC charge may be excused if the party had actual notice of the EEOC charge and an opportunity to participate in conciliation. *See Simbaki*, 767 F.3d at 483–84. Second, entities not named in an EEOC charge may still face suit if they share an "identity-of-interest" with an entity named in the EEOC charge. *See id.* at 484. Neither exception helps Reuter salvage his ADA claims against XTO.

Here, the actual notice exception is inapplicable because the summary judgment record conclusively establishes that XTO did not have actual notice of the EEOC charge nor an opportunity to participate in the conciliation process. Reuter does not bother to contest this point.

Turning to the "identity-of-interest" exception, the Fifth Circuit has adopted a four-part test "to determine whether there [is] sufficient identity-of-interest between the named and the unnamed party so that the unnamed party could be sued in court despite not being named in the charge." *Simbaki*, 767 F.3d at 482. Those four factors are:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
>
> 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 482–83 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

As to the first "identity-of-interest" factor, Reuter expressly admits that he knew XTO's role as his employer. *See* Dkt. 49 at 24 ("XTO's name was ascertained by Mr. Reuter at the time of his EEOC filing."). On the second factor, there is no evidence that XTO's and ExxonMobil's interests are so similar that, for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include XTO in the EEOC proceedings. As noted above, XTO and ExxonMobil are distinct legal entities that had separate Human Resources departments, payrolls, and financial books. The two companies also do not share officers or directors. The mere existence of a parent-subsidiary relationship between ExxonMobil and XTO is simply not enough, as a matter of law, to impute knowledge of the EEOC charge to XTO as the unnamed party. Moving to the third factor, XTO's absence from the EEOC proceedings undoubtedly resulted in actual prejudice to XTO. XTO did not have the opportunity to present a position statement in response to Reuter's charge or privately explore settlement through conciliation before being named in a federal court lawsuit. Finally, as to the fourth "identity-of-interest" factor, there is a complete dearth of evidence XTO represented that its employment relationship with Reuter be handled through ExxonMobil. All told, after carefully evaluating the four "identity-of-interest" factors,

8

the inescapable conclusion is that there is no clear identity of interests between XTO and ExxonMobil. The "identity-of-interest" exception is inapplicable here.

With his back against the wall, Reuter argues that his failure to name XTO in the EEOC charge should be excused because (1) he was not represented by legal counsel at the time he filed the EEOC charge; and (2) although he told an EEOC investigator to include XTO as a named party, the EEOC investigator left XTO out of the charge. These arguments are unavailing.

Although it is certainly true that "courts liberally construe [the ADA's] naming requirement so as to not frustrate claimants with needless procedural roadblocks," *Simbaki*, 767 F.3d at 481, neither Reuter's "unfamiliarity with the legal process nor his lack of representation during the applicable filing period" make him immune from the administrative prerequisites of bringing suit in federal court. *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991). The EEOC charge specifically asked Reuter to identify "the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency" he believed discriminated against him. Dkt. 41-24 at 2. Importantly, the charge provided space for Reuter to identify two separate entities who discriminated against him and invited him to list additional parties who discriminated against him in the body of the charge. Reuter listed ExxonMobil as the sole entity. Then, Reuter signed the EEOC charge under oath, attesting to the truthfulness of the statements contained in the charge. He cannot now shift blame to the EEOC investigator for his own failure to include XTO as a named party. As Defendants correctly observe: "Reuter is asking this Court to create an exception that would allow any plaintiff to cure Charge deficiencies by blaming the EEOC and claiming the agency messed up. This is an absurd result at best." Dkt. 53 at 7. I agree, and I decline to create such an exception here.

Given the record before me, I conclude that Reuter should have named XTO in the EEOC charge. His failure to do so means that he has failed to exhaust his administrative remedies with respect to XTO. As a result, XTO should be dismissed from this case.

**CONCLUSION**

For the reasons set forth above, I recommend that Defendants XTO Energy Inc. and Exxon Mobil Corporation's Motion for Summary Judgment (Dkt. 41) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 15th day of March 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE